# SUPREME JUDICIAL COURT

### FOR THE

## COUNTIES OF BRISTOL, PLYMOUTH, BARNSTABLE, AND DUKES COUNTY, OCTOBER TERM 1853, AT PLYMOUTH.

---

### PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. CHARLES A. DEWEY, ⎫
Hon. GEORGE T. BIGELOW, ⎪
Hon. BENJAMIN F. THOMAS, ⎬ Justices
Hon. PLINY MERRICK, ⎭

---

## Isaac G. Harding *vs.* Laban Souther & others.

The owners of a vessel engaged in the mackerel fishery are liable, as such, for the wages of the cook, employed by the master, unless the master has by his contract become owner *pro hac vice*, or there be some usage or contract by which the master, or master and crew are alone liable.

A master of a vessel does not become owner *pro hac vice* so as to exempt the general owners, in such case, unless the latter have let him the vessel for a term of time, giving him the entire control for the time being, to employ the vessel in such voyages as he sees fit, to engage and employ seamen, and pay all expenses incident to the navigation; and the usual shipping paper between

the owners, master and crew, for a mackerel voyage, does not constitute the master such owner.

Although by the general usage in the mackerel fishery, the amount of the cook's wages is always included in the "small general charge," so called, and is to be deducted from that portion of the proceeds of the voyage which is apportioned to the master and crew, and not from that portion retained by the owners of the vessel, this does not exempt the owners from their legal liability for the cook's wages.

THIS was an action of contract, to recover of the owners of a vessel employed in the mackerel fishery, the amount of the plaintiff's wages while so employed during the fishing season of 1851. The parties agreed on the following statement of facts:

In December, 1850, the skipper of the vessel, Elijah Foster, agreed with Laban Souther, the agent of the owners, to take the vessel on the usual terms on which vessels generally employed in that business are taken, and thereupon the skipper proceeded to engage a crew and cook, agreeing to pay the plaintiff, as cook, at the rate of thirty dollars per month. In April, 1851, the skipper, with the crew and cook, came to Cohasset, went on board the vessel, and proceeded to engage in the mackerel fishery. Laban Souther, one of the defendants, furnished, as agent of the owners, the supplies commonly called the " great generals," and the firm of L. Souther & Co., of which Laban Souther is one, furnished the " small generals."

The skipper and crew proceeded upon several fishing voyages during the season, and the fish caught were brought in, and delivered to Laban Souther, and by him packed and sold, he receiving the entire proceeds of the several voyages. In the settlement of such voyages among the owners, the skipper and crew, it is the general usage to deduct in the first place from the gross proceeds, the amount of the great generals bill. Three tenths of the remainder is retained by the owners as their share of the proceeds. The remaining seven tenths is apportioned among the skipper and crew in proportion to the number of fish caught by each. Then each man's share of the small generals is deducted from his proportion of the seven tenths, and the remainder is paid him as his share of

the proceeds of the voyage. The amount of the cook's wages is always included in the small generals bill, and charged to the skipper and crew.

The defendant Souther had no personal knowledge of the agreement between the skipper and the cook, by which wages were to be paid him, the bargain having been made at Brewster, where the skipper and cook resided. But it is the general usage in the mackerel fishery to employ the cooks upon wages. The fish caught by the cook are disposed of in the same way as the other fish caught, and after paying their share of the great generals bill and of the owners' three tenths, the remainder of the proceeds thereof is credited to the small generals bill. In this case, all such part of the proceeds of the mackerel caught by the cook have been accounted for by the owners to the skipper, who has paid the cook more than the amount of such part.

The shipping paper, copied in the margin,[1] was put into

---

[1] *United States of America.* Port of Cohasset, District of Boston and Charlestown. It is agreed between Laban Souther, owner of the schooner Bela Bates, qualified according to law, for carrying on the mackerel fishery, and Elijah Foster, master of the said schooner, and the fishermen whose names are to this agreement subscribed: That the said Laban Souther will, at his own expense, equip the said schooner with all necessary tackle and apparel, for carrying on the mackerel fishery; and the said schooner shall be so equipped, and fixed during the present fishing season. And the said master, with the said fishermen, doth agree with the said Laban Souther, owner aforesaid, to pursue the mackerel fishery in the said schooner during the present fishing season; and that he, the said master, will take all reasonable and proper measures to promote the success and prosperity of the voyage aforesaid; and that he will keep a just and true account of the quantity of fish each person, employed on board said schooner, may take during the said season; and that he will render such account to the owner of said schooner, in order that a division of said fish may be made among the fishermen, and their shares of the proceeds of said fish be ascertained, in manner by law provided, and as is hereafter agreed. And the fishermen whose names are hereunto subscribed, do agree with the said master, and with each other, and with the owner of the said schooner, that they will proceed in the said schooner on a fishing voyage, which shall continue either for one or more trips, or for the fishing season, as is against our names respectively written; and that we will, at our own expense, provide suitable fishing craft and provision for such a voyage; and that during the time for which we are respectively

the case, and the parties agreed that the court might make such inferences from it as a jury might do, reserving to either party the right to introduce evidence, if the court think proper, as to the construction to be put upon any of its terms.

It was agreed, for the purpose of this case, that the name of Isaac G. Harding upon the shipping paper, is not his signature, and that the printed form is filled up in the handwriting of Laban Souther, the agent of the owners. The shipping paper was signed by the crew, whose names appear thereon,

engaged, we will be ready to do and perform our proper duty on board said fishing vessel, being thereunto required by the master thereof; and that we will not absent ourselves from said vessel without leave of the master thereof, or the owner or agent. And it is agreed between the owner, master, and fishermen, aforesaid, that the fish, or proceeds of said fish, that may be caught on board of said schooner, by the master and his fishermen, shall, after deducting the expense for the general supplies, commonly called great general charge, be divided in the manner following, viz : To the owner of the vessel, for her share, three tenths part thereof; and the residue to and among the fishermen, including the master, in proportion to the number of fish they may respectively have caught.

The master, by these precepts, is agent to engage a crew for said schooner, and their agent to settle with the owner or agent, and receive from him or them the net proceeds of the voyage, and give a receipt in full in our behalf; and after paying the small general charge against the crew, he shall divide the balance among the crew as herein agreed. And it is further agreed that the owner or agent of said schooner is not holden for any wages due on said voyage, unless by special agreement made with the owner or agent.

And the said Laban Souther, owner as aforesaid, doth stipulate to and with the said master and fishermen, that he will render a just and true account of delivery or sales of all fish that may be delivered him or his agent, by the said Elijah Foster, master of the said schooner, or by the fishermen employed on board the said schooner ; and will account with the master or with each fisherman, employed as aforesaid, for their respective shares of said fish, delivered as aforesaid, and for their interest in said fishing voyage, and also for their respective proportions of the allowance the owner of said schooner Bela Bates, may be entitled by law to receive for any property saved at sea.

And it is further agreed between the parties, that the said master, together with the fishermen, are entitled to all the benefits and privileges, and subject to all the duties and penalties provided by a law of the United States, entitled " An act concerning certain fisheries of the United States, and for regulating and governing the fishermen employed therein." [The signatures are omitted.]

without the personal knowledge of Souther, or of either of the owners.

If upon the above facts, the owners are liable for the wages of the cook, judgment is to be rendered for the plaintiff for $122, otherwise the plaintiff is to become nonsuit.

At the September term of the court of common pleas, 1853, judgment was given for the plaintiff, and the defendants appealed.

*G. Marston*, for the defendants. I. The master takes the vessel upon such terms that he is owner, *pro hac vice;* and he alone, or he and the crew, are responsible for all necessary supplies, including the provisions and cook's wages.

1. The master here has the entire control and command over the possession and navigation of the vessel.

2. He takes the vessel on shares — that is, the owners are to have a certain proportion of the earnings or catchings for the hire or use of their vessel.

3. The relation of principal and agent, which alone seems to give the master authority to bind the owners for wages for men, does not here exist. The master is contracting for himself and the crew. *Drinkwater* v. *Brig Spartan*, Ware, 149; *Newberry* v. *Colvin*, 7 Bing. 190; *Hooe* v. *Groverman*, 1 Cranch, 215; *McIntire* v. *Bowne*, 1 Johns. 229; *Webb* v. *Peirce*, 15 Law Rep. 9; *Marcardier* v. *Chesapeake Ins. Co.* 8 Cranch, 49; *Houston* v. *Darling*, 4 Shepl. 413.

II. The master takes the vessel on the usual terms. By these, it appears that the provisions and cook's wages are chargeable to the master and crew, because such is the general usage. The credit was then given by the cook to the master and crew, and this is the material fact. *Webb* v. *Peirce*, 15 Law Rep. 9. In that case the court notice that the claimant resided where he must have known the usage of the trade In this case, the plaintiff lived at Cape Cod, and must have known the usage of the fishing business.

III. Aside from the general principles of the maritime law, the usage of the fishing business, which is *sui generis*, has enacted the law which is to govern persons employed in that business. By this it has been fixed.

1. That the skipper and crew are liable alone for smal' generals. 2. That the cook's wages are small generals.

The court should regard the law of the trade, as settled and acted upon by the class of men who are engaged therein, rather than by forced application of the principles of the general maritime law. The law of the fishing business is so well settled by usage, that the plaintiff must have understood the same, and contracted with the skipper in this case, in view of that usage. The credit was given to the skipper and crew, and to the expectations and catchings, and not to the owners, whom it is presumed the plaintiff did not know. The cook of a fishing vessel is merely the servant of the crew. He is not a mariner in the ordinary sense, and not entitled to the privileges of a mariner. It is a matter of familiar history that formerly the crews did their own cooking. Now they do it by their servant, the cook. — Corwin's Treasury Circular. Though the defendants' vessel might be liable in a proceeding *in rem*, the owners are not liable *in personam*. Though the defendants may be liable *in personam* in the admiralty, yet in common law the usage of the business must be regarded as decisive of the legal relations of the parties. By the shipping paper, the owners are not to be liable for wages, except by special agreement, and such agreement is expressly negatived by the facts.

*S. N. Small*, for the plaintiff. 1. It appears from the statement of facts that the plaintiff served as cook on board the defendants' vessel, and that he was shipped for that purpose by the master, who agreed to pay him at the rate of thirty dollars per month. These facts constitute a *primâ facie* case of liability against the owners, upon the general principle of the law that the owners are personally liable upon the contracts of the master with the seamen for their wages. Curtis's Merchant Seamen, 18, 172, 328; Abbott on Shipping, 124, 131, 134; *Wait* v. *Gibbs*, 4 Pick. 298; *Webb* v. *Peirce*, 15 Law Rep. 10; *Certain Logs of Mahogany*, 2 Sumn. 589.

2. To exempt the owners from this liability, it must appear that the master was owner *pro hac vice*. *Webb* v. *Peirce*, 14

Law Rep. 200, & 15 Law Rep. 10; *Perry* v. *Osborne*, 5 Pick. 422.

3. To constitute the master owner for the voyage, the general owner must have let or chartered the vessel to him, and have parted with all right to control him or to direct the employment of the vessel during the existence of the contract, and the master must have the exclusive control and direction of the vessel and of the business in which she is engaged. In this case there is nothing to show that the vessel was chartered to the master, or that he was entitled to the exclusive control and direction of the vessel, and it does not appear but that she was in the employment of the general owners. *Reynolds* v. *Toppan*, 15 Mass. 370; *Taggard* v. *Loring*, 16 Mass. 336; *Cutler* v. *Winsor*, 6 Pick. 335; *Webb* v. *Peirce*, 14 Law Rep. 200, & 15 Law Rep. 10; *Certain Logs of Mahogany*, 2 Sumn. 589; *Skolfield* v. *Potter*, Davies, 392; *Emery* v. *Hersey*, 4 Greenl. 407–412; *Lyman* v. *Redman*, 10 Shepl. 289; *Ship Nathaniel Hooper*, 3 Sumn. 575; *Schooner Cassius*, 2 Story R. 81, 93.

4. It appears from the statement of facts and the shipping paper, that the master was to receive a certain share of the net proceeds of the voyage, after deducting the great generals bill and the owners' three tenths, he paying his share of the small generals bill; but it also appears that the crew were engaged upon the same terms as the master, and that their shares were to be ascertained by the same method of computation as was that of the master. If, therefore, the master was owner, *pro hac vice*, the crew must also be regarded as co-owners with him. But the crew cannot be regarded as owners or part owners, *pro hac vice*, because they were shipped as crew by the master, who, in addition to the general authority of the master to hire a crew, was specially constituted agent of the owners for that purpose. There is also nothing in the facts of the case to show that the vessel was let or chartered to them, or that the owners surrendered to them the right of directing and controlling the vessel.

5. The facts of this case show that the vessel was not chartered to the master, because, 1st. By the contract, the fish

when brought in, were to be delivered to the agent of the owners, and must be considered as their property. *Baxter* v. *Rodman*, 3 Pick. 435; *Baker* v. *Corey*, 19 Pick. 498; *Barney* v. *Coffin*, 3 Pick. 123; *Bishop* v. *Shepherd*, 23 Pick. 492–494. 2d. The owners engaged in the voyage, furnishing a part of the supplies (great generals) and employing the crew. *Palmer* v. *Gracie*, 4 Wash. C. C. 110; Curtis's Merchant Seamen, 331, 334; *Cutler* v. *Winsor*, 6 Pick. 338; *Reynolds* v. *Toppan*, 15 Mass. 373; *Gracie* v. *Palmer*, 8 Wheat. 606; *McIntire* v. *Bowne*, 1 Johns. 228; *Hooe* v. *Groverman*, 1 Cranch, 214; *Marcardier* v. *Chesapeake Ins. Co.* 8 Cranch, 39. 3d. It has been uniformly held in the courts of this country and England, that in the fishing business the shares for which the fishermen contract are in the nature of wages. *Wilkinson* v. *Frazier*, 4 Esp. 182; Curtis's Merchant Seamen, 13, 75; Flanders' Maritime Law, § 441; *Baxter* v. *Rodman*, 3 Pick. 435; *The Crusader*, Ware, 440; *The Frederick*, 5 Rob. Adm. R. 8.

6. The fact that the cook's wages were to be included in the small generals bill, and to be deducted proportionally from the several shares of the master and crew, does not exempt the owners from their liability for his wages, for this was only with a view to a proper adjustment of the business among the parties, and no agreement between the owners and crew can affect the legal rights of the plaintiff who was not a party to the contract. *Houston* v. *Darling*, 4 Shepl. 413; *Wait* v. *Gibbs*, 4 Pick. 298; *Webb* v. *Peirce*, 15 Law Rep. 11.

7. It does not appear that it is the usage for the master and crew actually to pay the cook the amount of his wages, but that the amount is deducted in ascertaining their several shares, and retained in the hands of the owners. The presumption is, that the owners retain it to secure themselves against their liability to the cook, for they have no right to retain it, except upon the ground that they are thus liable.

8. The owners are liable for the plaintiff's wages, because by the terms of the shipping paper the master was agent of the owners to ship a crew, and they must, therefore, be liable upon the contract of the master with the cook to pay him

wages, it appearing that it is the general usage in the mackerel fishery to employ the cooks on wages.

SHAW, C. J. Though this action involves but a small amount in money, it is one, we presume, interesting to the large class of persons in this part of the commonwealth, engaged in the sea fisheries. It is an action brought by the plaintiff, as cook of a vessel engaged in the mackerel fishery. It being agreed in the statement of facts, that the plaintiff was engaged by the skipper, or master of the vessel, at the rate of thirty dollars per month for the season, and that he performed the voyage, the master being the agent of the owners, the legal conclusion would seem to be, that the plaintiff is entitled to maintain his action.

Two grounds are taken in defence, 1. That Elijah Foster, skipper, as the master of a fishing vessel is usually called, took the entire vessel for the season, and so became owner *pro hac vice,* and thus by a well-known exception to the general rule which holds the general owners liable, exempts them from liability for seamen's wages and other charges of navigation, whilst such exclusive employment and special ownership continue.

But the court are of opinion that by the facts agreed, and especially by the shipping paper, which is put in, and which makes part of the case, there was no such agreement as to make the skipper owner *pro hac vice.* Such a temporary suspension of the liability of general owners arises only, when they have let out their vessel, for a term of time, to another party, giving him the entire control for the time being, to employ the vessel in such voyages and enterprises as he sees fit, to engage and employ seamen, and pay all expenses incident to the navigation. But, in the present case, there was no such letting of the vessel. The shipping paper is a common document, such, we presume, as is required by the law of the United States, between the owners, skipper, and crew, for a mackerel voyage. The master had the usual powers and privileges of a skipper, and no others ; and his relations both to the owners and crew are to be governed accordingly. This agreement provides for the distribution of the proceeds

of the voyage, amongst the owners, skipper, and crew. And a most significant provision, showing not only an interest, but the entire control over the voyage as owner, is the stipulation of said Souther as owner, with the master and fishermen, that he will render a just and true account of the sales of all the fish which may be delivered to him by the master, and will account with the master or with each fisherman for their respective shares or proportions. This contains a clear implication that all the fish are to be delivered to the owners, who are to sell them and account to the various fishermen entitled to the proceeds, in the proportions stipulated. The crew are, therefore, in fact, to be paid in money, from a fund to be raised by the owners, by the sale of the entire fare of fish. They are, therefore, paid by the owners and paid in money; but instead of being paid according to the time occupied, as in the ordinary case of seamen's wages, they are paid in the aggregate, a certain proportion to the whole fare taken and brought in, and this is distributed amongst the individual fishermen, according to the number of fish taken by each, of which an account is to be kept. The enterprise, therefore, was conducted, as usual in fishing voyages, on account of the general owners, and has none of the features of a case, in which one takes the entire vessel on shares, or at a specific charter, to man, victual and manage, at his own discretion, in which the hirer becomes owner for the time being.

2. The other ground of defence taken is, that as the cook is mainly employed in providing for the wants of the skipper and crew, and is, in effect, their servant, and as the cook's wages are by the established usage of the business a charge upon what is called the small general charges, and so comes out of the shares of the skipper and crew, therefore, the skipper and crew, and not the owners, are to pay him those wages. But we think this is not a just or legal conclusion.

In order the better to understand the subject, it is necessary to look at the actual relations of the parties, as they appear by the shipping articles, and the usages of the business. In this department of industry it has been, we believe, the policy of those engaged in it, a policy encouraged by the govern-

ment of the United States, so far as they have any control and jurisdiction over it, to stimulate the exertions of all those actually engaged in the pursuit of fishing, by making the compensation of each depend on the number of fish he may individually take; and this again must depend upon the actual degree of skill he may acquire, and the industry with which he applies it. But it is obvious that this cannot extend to the cook, as a large part, perhaps the greater portion of his time is necessarily employed in preparing food for the crew. And although he may be employed occasionally in fishing, his compensation cannot be equitably compensated by paying him in proportion to the fish caught by him. We find, therefore, by the general usage, that his compensation is fixed by monthly wages, which are a charge upon the small generals. The fishing articles then provide how the distribution of the whole is made, and these accounts called the great generals and the small generals are formed. It is stipulated that from the whole net proceeds of the sale of the entire fare of fish, are to be deducted the expense for the general supplies, commonly called the "great general charge;" of the residue, three tenths are to go to the owners, and the residue to and among the fishermen, including the master, in proportion to the number of fish by them respectively caught.

In another clause of the articles, it is stipulated that the master is agent, &c., to engage a crew, to settle with the owner or agent, and receive from him or them the net proceeds of the voyage, and give a receipt therefor in their behalf, and after paying the "small general charge" against the crew, he shall divide the balance, &c.

From these provisions several conclusions may be drawn. We find that the cook's wages, being a charge upon the shares in money coming to the skipper and fishermen, comes from that same common fund, from which all the other persons composing the crew are paid, the sales of the fish; and this fund is, in the first instance, placed in the hands of the owners. It is further manifest, that although the money for the fishermen and the cook is to be divided by the master, yet in doing this service, he is the agent between the owners

27 *

and the crew, to pay a sum for which the owners are the debt-ors, and the crew the creditors, and the individual members of the crew, including the cook, have no legal claim upon the master as a contracting party with them.

But there is a stipulation as above recited on the part of the seamen, that the master shall be their agent to receive their shares and give a receipt in full. In the first place, being agent to receive of the owners, the implication is strong that the owners are those who are to pay. Again; if the owners had in fact paid over the wages of the plaintiff to the master for his use, in good faith, and the master had squan-dered it, this might raise a grave question, which party should lose it. But it is proper to remark, that in such cases, such clauses in the articles are construed with great strictness, not to say jealousy, by courts of justice, in protecting the rights of seamen; and the good faith of the owners, who would defend against a claim of the seamen on that ground, would be very strictly scrutinized.

But it is manifest, that an authority from the seamen to the master to act for them in receiving their dues and giving acquittances to owners, is a naked authority, coupled with no interest, and, therefore, is always revocable before executed. In the present case, there is no suggestion that the master has received the plaintiff's wages from the owners under this authority, and no such acquittance is relied on; on the con-trary, the defendants have maintained that they were not lia-ble as owners, and that the legal claim of the plaintiff was on the master, or master and fishermen, to whom, or on whose shares the small general charges are placed, in stating the accounts.

There is one further clause in the articles, which may be considered as requiring a remark. It is that in which it is provided that the owner or agent is not holden for any wages due on said voyage, unless by special agreement made with the owner or agent. Here such a special agreement was made, and made in pursuance of a general usage, arising out of the necessities of the occupation, that a cook should receive wages; it being also found, as an equitable qualification of

this rule, that an account is kept of all the fish the cook may take in the intervals of his appropriate occupation, and the net proceeds then are credited to the account of small general charges, so that the master and fishermen are in effect charged with no more than the actual cost of the services of the cook.

The court are of opinion that although the cook's wages in making up the accounts, are thrown directly upon the shares of the crew, yet this does not make the master and crew debtors to the cook for them, but leaves the owner to pay them or cause them, through the master, to be paid out of the fund placed in their hands for this purpose, and not having been paid, this action well lies against the owners.

*Judgment on the agreed facts for the plaintiff.*